[Cite as *In re A.A.*, 2016-Ohio-2992.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


IN THE MATTER OF:              :
                                        CASE NO.   CA2015-12-098
          A.A.                 :
                                        O P I N I O N
                               :        5/16/2016

                               :

                               :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2015JC04725


Mary K. Phillips, 285 East Main Street, Batavia, Ohio 45103, Guardian Ad Litem

Dever Law Firm, Scott A. Hoberg, 9146 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellant

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee


          **S. POWELL, J.**

          {¶ 1}   Appellant, the biological mother of A.A., appeals from the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter to appellee, Clermont County Department of Job and Family Services ("CCDJFS").  For the reasons outlined below, we affirm.

          {¶ 2}   On January 23, 2015, CCDJFS filed a complaint seeking permanent custody of

A.A. alleging she was a dependent child after it received a report that both her mother ("Mother") and father ("Father") were observed under the influence of drugs. The complaint also described concerns regarding A.A.'s current living conditions with her maternal grandmother ("Grandmother") that included allegations of "hoarding and pet feces throughout the home." The complaint then noted that "there are 8 children living there and the caregiver [Grandmother] is already overwhelmed." The complaint further noted that both Mother and Father had "their parental rights terminated in Adams [C]ounty in January 2014" for A.A.'s then two-year-old brother, J.A. At the time the complaint was filed, A.A. was nine months old.

{¶ 3} After holding an emergency hearing on the matter, the juvenile court placed A.A. in the temporary custody of CCDJFS and appointed her a guardian ad litem. A.A. was then placed in a foster home with the same foster family that had previously adopted her brother J.A. Approximately two months later, on March 27, 2015, Grandmother filed a complaint seeking legal custody of A.A. In support of her complaint, Grandmother alleged she had been caring for A.A. since she was born, that she had custody of A.A.'s other seven brothers and sisters, and that she wanted to "raise the children together as a family." However, later that same day, Grandmother dismissed her complaint. The juvenile court then adjudicated A.A. a dependent child and scheduled a dispositional hearing before a juvenile court magistrate for July 10, 2015.

{¶ 4} At the hearing, the magistrate heard testimony from the guardian ad litem, Mother, Grandmother, and A.A.'s foster mother, among others. Following this hearing, on July 24, 2015, the magistrate issued a decision granting permanent custody of A.A. to CCDJFS. Mother then filed objections to the magistrate's decision, which the juvenile court subsequently overruled in a decision issued on November 19, 2015. Mother now appeals from the juvenile court's decision to grant permanent custody of A.A. to CCDJFS, raising the following single assignment of error for review.

{¶ 5} IN A CHILD CUSTODY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER GRANTING PERMANENT CUSTODY OF THE CHILD TO THE AGENCY DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} In her single assignment of error, Mother argues the juvenile court's decision to grant permanent custody of A.A. to CCDJFS was against the manifest weight of the evidence. We disagree.

{¶ 7} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Generally, an appellate court's review of a juvenile court's decision granting permanent custody is limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. However, even if the juvenile court's judgment is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 8} In determining whether a decision is against the manifest weight of the evidence, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶

25. As a result, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 9} A public children services agency may obtain permanent custody of an abused, neglected, or dependent child in one of two ways. *In re Ament*, 142 Ohio App.3d 302, 309 (12th Dist.2001); *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 22. An agency may either (1) obtain temporary custody of the child and then file a motion for permanent custody, or (2) request permanent custody as part of its original abuse, neglect, or dependency complaint. *In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22. As noted above, CCDJFS filed a complaint seeking permanent custody of A.A. alleging she was a dependent child. Therefore, the statutory framework for granting permanent custody as found in R.C. 2151.353(A)(4) applies to the case at bar.[1] *In re W.R.*, 12th Dist. Fayette No. CA2011-08-016, 2012-Ohio-382, ¶ 30.

{¶ 10} Pursuant to R.C. 2151.353(A)(4), in order to grant permanent custody as part of its original disposition, such as the case here, a juvenile court must apply a two-prong test. *In re T.K.K.* at ¶ 23. First, using the factors in R.C. 2151.414(E), the court must determine that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *Id.* Second, using the factors in R.C. 2151.414(D)(1), the court must determine that permanent custody is in the best interest of the child. *Id.*

{¶ 11} In this case, the juvenile court determined that A.A. could not be placed with either of her parents within a reasonable time or should not be placed with either of her

---

1. As the record reveals, both parties rely on R.C. 2151.414(B)(1), a statute that generally applies when a public children services agency files a motion for permanent custody after an initial disposition finding a child abused, neglected, or dependent. This is the same statute the juvenile court applied in granting permanent custody of A.A. to CCDJFS in this case. Nevertheless, although applying the wrong statutory framework, the juvenile court nevertheless made the necessary findings for granting permanent custody as required by R.C. 2151.353(A)(4).

parents in accordance with R.C. 2151.414(E)(11). Pursuant to that statute:

> (E) In determining at a hearing held pursuant to division (A) of this section * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * *
>
> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 12} Such is the case here for the record firmly establishes that both Mother and Father had their parental rights to A.A.'s brother, J.A., involuntarily terminated by the Adams County Court of Common Pleas, Juvenile Division, on January 28, 2014. The record also plainly reveals that neither Mother, who admittedly does not have permanent housing, nor Father, who is incarcerated, can provide a legally secure placement and adequate care for the health, welfare, and safety of their daughter. In reviewing her brief submitted in this matter, Mother does not dispute these findings. Instead, Mother raises a manifest weight of the evidence challenge to the juvenile court's decision finding it was in A.A.'s best interest to grant permanent custody to CCDJFS.

{¶ 13} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the

- 5 -

child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 14} With respect to R.C. 2151.414(D)(1)(a), the juvenile court found Mother has bonded with A.A. In addition, unlike Father who has shown absolutely no interest in maintaining a relationship with his daughter, the juvenile court determined that Mother visited her daughter on a weekly basis while A.A. was in the temporary custody of CCDJFS. However, concerns were raised when Mother was observed giving A.A. soda pop and coffee during at least one of these visits. The juvenile court also found that while Grandmother cares for and has custody of A.A.'s other seven brothers and sisters, there were significant concerns regarding the cleanliness of both the home and the children. This includes testimony from the guardian ad litem indicating the home was in "very, very poor" condition, as well as evidence indicating A.A. had lice and severe diaper rash upon her removal from Grandmother's home. The juvenile court also noted that the record was devoid of any evidence indicating what kind of direct interaction Grandmother had with A.A.

{¶ 15} The juvenile court found that A.A. had been removed from Grandmother's home and been placed with the same foster family that adopted her brother J.A. According to the juvenile court, A.A. and J.A. have a typical brother-sister relationship with one another.

- 6 -

In addition, the juvenile court found A.A., who is described by her foster family as being bright and very active, has learned to walk while in their home. The juvenile court also found A.A. enjoys playing with a variety of toys and being outside. The juvenile court further noted that A.A. has been given the medical attention she requires now that she has been placed in foster care and that she is current on all her immunizations. The record also indicates A.A.'s foster family wanted to adopt A.A. should permanent custody be granted to CCDJFS.

{¶ 16} In consideration of R.C. 2151.414(D)(1)(b), the juvenile court noted that A.A. was unable to express her desire due to her young age. However, the juvenile court did note that the guardian ad litem recommended granting permanent custody of A.A. to CCDJFS. According to the guardian ad litem's report, this recommendation was based on Mother and Father's continued serious substance abuse problems and lack of financial resources. The guardian ad litem's report also noted that A.A. had lice and severe diaper rash when she was removed from her "filthy home" prior to being adjudicated dependent.

{¶ 17} Next, when taking into account R.C. 2151.414(D)(1)(c), the juvenile court found A.A. had been in the custody of CCDJFS since her removal from Grandmother's home on January 23, 2015. At the time of her removal, A.A. was nine months old.

{¶ 18} With regard to R.C. 2151.414(D)(1)(d), the juvenile court found A.A. was in need of legally secure placement through the granting of permanent custody to CCDJFS. In so finding, the juvenile court denied Mother's claim that placement of A.A. with Grandmother or with her cousin ("Cousin") was in her daughter's best interest since "neither the grandmother nor the mother's cousin had a motion for legal custody before the Court at the time that the permanent custody matter was heard." The juvenile court also noted that there was testimony indicating Grandmother's home was "very chaotic," "extremely dirty," and overly crowded with at least seven other children then living in the home. As the juvenile court determined, "[a]t some point there has to be a limit * * * to the number of children that

- 7 -

the grandmother can safely handle." As it relates to Cousin, the juvenile court found the testimony indicated he was "satisfied with the child's placement as long as she receives the care that she needs."

{¶ 19} Finally, with respect to R.C. 2151.141(D)(1)(e), the juvenile court determined that R.C. 2151.141(E)(11) applied since, as noted above, both Mother and Father had their parental rights to A.A.'s brother, J.A., involuntarily terminated by the Adams County Court of Common Pleas, Juvenile Division, on January 28, 2014.

{¶ 20} Despite these findings, Mother argues the juvenile court's decision to grant permanent custody to CCDJFS was not in A.A.'s best interest since A.A. could have been placed in the custody of her relatives, presumably either Grandmother or Cousin. However, as noted above, neither Grandmother nor Cousin had a motion for legal custody pending before the juvenile court prior to the juvenile court issuing its decision. Moreover, the record firmly establishes that Grandmother was already taking care of at least seven other children in an overly crowded home that had been characterized as "very chaotic" and "extremely dirty." The juvenile court also found that A.A. had lice and severe diaper rash upon her removal from Grandmother's home.

{¶ 21} Furthermore, as it relates to Cousin, the juvenile court determined that the testimony indicated he was "satisfied with the child's placement as long as she receives the care that she needs." The record supports this finding. Therefore, while it is understandable for Mother to want her daughter to be with family, as this court has stated previously, "[w]hile 'blood relationship' and 'family unity' are factors to consider when determining a child's best interest, neither one is controlling." *In re S.K.G.*, 12th Dist. Clermont No. CA2008-11-105, 2009-Ohio-4673, ¶ 12. Accordingly, since the record fully supports the juvenile court's decision finding it was in A.A.'s best interest to be placed in the permanent custody of CCDJFS, Mother's first argument is without merit.

{¶ 22} Mother also argues the juvenile court's decision to grant permanent custody of A.A. to CCDJFS was improper since CCDJFS did not make "reasonable efforts" to reunify A.A. with her family. However, pursuant to R.C. 2151.419(A)(2)(e), the juvenile court magistrate concluded that CCDJFS was not required to make reasonable efforts to eliminate the continued removal of A.A. from her home since both Mother and Father had their parental rights involuntarily terminated with respect to A.A.'s brother J.A. As relevant here, R.C. 2151.419(A)(2)(e) mandates the juvenile court to "make a determination that the agency is not required to make reasonable efforts to * * * eliminate the continued removal of the child from the child's home, and return the child to the child's home" when "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code[.]" The magistrate further concluded that "[t]o the extent that [CCDJFS] was required to make reasonable efforts to reunify the parents with the child, [CCDJFS] made such efforts."

{¶ 23} After a thorough review of the record, we find no error in the magistrate's decision regarding the application of R.C. 2151.419(A)(2)(3) to the case at bar. Again, because the record firmly establishes that both Mother and Father had their parental rights involuntarily terminated with respect to A.A.'s brother J.A., the plain language of R.C. 2151.419(A)(2)(e) mandated the juvenile court find CCDJFS was not required to make reasonable efforts to eliminate A.A.'s continued removal from her home. That is exactly what the magistrate concluded as part of its decision, a decision that was subsequently adopted and affirmed by the juvenile court. Therefore, because we find no error in the juvenile court's decision, Mother's second argument is also without merit.

{¶ 24} In light of the foregoing, and after carefully reviewing the record in this case, we find the juvenile court's findings are supported by sufficient, credible evidence and are otherwise not against the manifest weight of the evidence. Therefore, while Mother may

have wanted custody to be granted to either Grandmother or Cousin, we find no error in the juvenile court's decision finding it was in A.A.'s best interest to be placed in the permanent custody of CCDJFS. Accordingly, Mother's single assignment of error is overruled.

{¶ 25} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.