[Cite as *In re S.H.*, 2020-Ohio-3499.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN RE:

S.H.

:

:

:

:

:

:

:

CASE NOS. CA2020-02-023
CA2020-02-024

O P I N I O N
6/29/2020

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2019-0064

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job and Family Services

Amy R. Ashcraft, 284 N. Fair Ave., Hamilton, Ohio 45011, for CASA

The Search Law Firm, Lorraine M. Search, 6 S. Second Street, Suite 309, Hamilton, OH 45011, for appellant, father

Garrett Law Offices, Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellant, mother

Legal Aid of Southwest Ohio, LLC, Tracy A. Jackson, 10 Journal Square, Third Floor, Hamilton, Ohio 45011, guardian ad litem

**S. POWELL, J.**

{¶ 1} Appellants, the biological parents of S.H. ("mother" and "father" individually),

appeal the decision of the Butler County Court of Common Pleas, Juvenile Division,

granting permanent custody of S.H. to appellee, the Butler County Department of Jobs and Family Services, Butler County Children Services ("BCCS"). For the reasons discussed below, we affirm the decision to grant permanent custody to BCCS.

{¶ 2} On May 2, 2018 BCCS filed a complaint against appellants alleging that S.H. — eight years old at the time — was an abused, neglected, and dependent child. The basis for the complaint was appellants' failure to provide medical treatment and management for S.H.'s type I diabetes which led to her suffering a near-fatal health crisis that required intensive care in the hospital. The juvenile court granted an emergency order to remove S.H. from appellants' home and place her in BCCS's temporary custody. From May to August, appellants had supervised visitation with the child. However, in August 2018, the juvenile court suspended mother's visitation privileges because of her repeated violations of visitation policy. Around this time, appellants were indicted on several felony offenses including, among other things, child endangering, a third-degree felony. The criminal charges stemmed from the same events that triggered the abuse, neglect, and dependency complaint and the child's removal from her parents' home. As a result of the pending criminal charges, the juvenile court ordered appellants to have no contact with S.H.

{¶ 3} On February 12, 2019, BCCS filed a new complaint, alleging that S.H. was an abused, neglected, and dependent child based on the same allegation in the former complaint and an additional allegation that appellants failed to provide for S.H.'s appropriate educational development.[1] In the complaint, BCCS sought permanent custody of the child. BCCS further moved, ex parte, for a renewed no-contact order between appellants and S.H because of the pending criminal charges. That same day, the juvenile court granted the

---

1. The second complaint was filed under a different case number than the initial complaint. BCCS moved to dismiss the prior complaint because it was not progressing within the statutory timeframe requirements due to appellants repeated requests for continuances while they resolved their criminal charges. Notwithstanding the dismissal, S.H. remained in BCCS's temporary custody living with a foster family

no-contact order. However, on February 14, 2019, the juvenile court issued an order allowing for the "liberalization" of appellants' visits.

{¶ 4} This matter proceeded to an adjudicatory hearing on August 6, 2019, wherein appellants stipulated that S.H. was abused and dependent. Based on the stipulations, the juvenile court adjudicated S.H abused and dependent. Appellants moved the court for a reinstatement of visitation privileges with S.H. BCCS and the guardian ad litem opposed the motion, arguing that because BCCS sought permanent custody as the original disposition, it would not be in the child's best interest to grant appellants interim visitation privileges. In a written decision, the juvenile court further ordered that visitation may be "liberalized."

{¶ 5} Subsequently, at the dispositional hearing on September 30, 2019, the magistrate heard testimony from both appellants, the assigned case worker from BCCS, and S.H.'s foster mother. The juvenile court also received into evidence several documentary exhibits including certified copies of court records for the criminal case, including the judgments of conviction for both mother and father. Following this hearing, on October 30, 2019, the magistrate issued its written decision granting permanent custody of S.H. to BCCS. Appellants filed objections to the magistrate's decision and the juvenile court overruled those objections in a decision entered on January 16, 2020.

{¶ 6} Appellants now appeal. Mother assigns two errors for review and father assigns one error for review. For ease of analysis we will discuss the assigned errors out of order and appellants' similar assigned errors together.

{¶ 7} Mother's Assignment of Error No. 2:

{¶ 8} THE TRIAL COURT'S DECISION TO DENY PARENTING TIME DURING THE CASE AND TO GRANT THE AGENCY PERMANENT CUSTODY OF THE CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY SUFFICIENT EVIDENCE FOR THE FOLLOWING REASONS: (1) THE

CHILD HAD NOT BEEN REMOVED 12 OF 22 MONTHS DURING THE CURRENT PENDING CASE; (2) THE EVIDENCE DOES NOT ESTABLISH, THAT THE AGENCY USED REASONABLE EFFORTS TO PREVENT THE CHILD'S CONTINUED REMOVAL FROM THE HOME; AND (3) THE EVIDENCE DOES NOT SHOW THAT PLACING THE CHILD IN THE AGENCY'S PERMANENT CUSTODY IS IN HER BEST INTERESTS.

{¶ 9} Father's Assignment of Error:

{¶ 10} THE JUVENILE COURT'S JUDGMENT GRANTING THE MOTION FOR PERMANENT CUSTODY TO BUTLER COUNTY CHILDREN SERVICES ("BCCS") WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} In their respective assignments of error, appellants essentially present two issues. Initially, they assert that BCCS failed to make reasonable efforts as required by R.C. 2151.419. Next, they argue that the juvenile court's decision to grant permanent custody to BCCS was not supported by sufficient evidence and was against the manifest weight of the evidence.

**Reasonable Efforts**

{¶ 12} Mother contends that she was not given an opportunity to reunify with S.H., in part because a case plan was not *adopted* by the court. A public children services agency "shall prepare and maintain" a case plan when it files a complaint alleging abuse, neglect, or dependence; or has temporary or permanent custody of the child. R.C. 2151.412(A). The juvenile court shall journalize the case plan as part of its dispositional order. R.C. 2151.353(E); *see also* R.C. 2151.412(E). As will be discussed more below, BCCS filed a case plan in this case, as well as, in the prior case. Therefore, mother's argument that the juvenile court erred by not adopting a case plan prior to the disposition hearing lacks merit.

{¶ 13} Appellants together argue that the magistrate erred when it found that BCCS made reasonable efforts to "reunify" the family pursuant to R.C. 2151.419. Again, their argument lacks merit. R.C. 2151.353(I) provides that

> [t]he court shall not issue a dispositional order pursuant to

division (A) of this section [that is, R.C. 2151.353] that removes a child from the child's home unless the court complies with section 2151.419 of the Revised Code and includes in the dispositional order the findings of fact required by that section.

Pursuant to R.C. 2151.419(A)(1) a public children services agency must make reasonable efforts "to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." To determine whether the public children services agency made reasonable efforts, "the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re K.M.,* 12th Dist. Butler No. CA2004-02-052, 2004-Ohio-4152, ¶ 23; *accord In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 16. In considering the reasonableness, the child's health and safety are paramount. R.C. 2151.419(A)(1).

{¶ 14} In the dispositional order, the magistrate made the findings of fact required by R.C. 2151.419. The magistrate found that BCCS filed a case plan in the earlier case, that case plan was signed by appellants, and that appellants acknowledged their signature on the case plan. When BCCS initiated the cause sub judice, the agency reinstated the previous case plan. The magistrate found that since May 2018 appellants had only fulfilled one of the requirements of the case plan, that is, the completion of a psychological evaluation. The magistrate further found that the case worker for BCCS attempted to contact appellants numerous times, but appellants did not respond. Moreover, BCCS attempted to locate a next-of-kin suitable for an alternative placement.

{¶ 15} After our review of the record, the magistrate's findings as to the reasonableness of BCCS's efforts are supported by the record. Appellants testified generally of their understanding of the requirements of the case plan. While their testimony implied that they did not fully appreciate the case plan requirements, it was clear that the

plan was known to them. In fact, appellants testified that they completed the psychological evaluation and sought out health support groups in an effort to fulfill the case plan recommendations.

{¶ 16} Moreover, the case worker testified about her fruitless efforts to contact appellants multiple times between September 2018 and January 2019. The case worker further testified that while appellants were eventually removed from the agency's prior case plan due to their lack of involvement, the agency reinstated appellants in the case plan when the instant case was initiated. Moreover, the case worker testified that in order to resume visitation with S.H. appellants had to demonstrate to the agency that they understood and accepted the reasons for the child's removal. Nevertheless, appellants failed to communicate with BCCS to demonstrate their understanding of the situation or their progress on case plan requirements. Appellants also did not request to use the agency's resources. This lack of communication persisted even after appellants resolved their criminal cases. Considering these facts, the magistrate did not err in finding that BCCS made reasonable efforts in this matter.

**Permanent Custody Determination**

{¶ 17} A public children services agency may seek permanent custody of a child in an abuse, neglect, or dependency proceeding in one of two ways. It may either request in the complaint that the juvenile court grant permanent custody as the original dispositional order or the agency may later seek permanent custody after an initial dispositional order granted that agency temporary custody. *In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22; *In re C.S.*, 12th Dist. Warren No. CA2018-07-080, 2018-Ohio-4786, ¶ 21. In this case, BCCS sought permanent custody in its complaint as the original dispositional order, therefore the statutory provision of R.C. 2151.353(A)(4) applies. *In re*

*W.R.*, 12th Dist. Fayette No. CA2011-08-016, 2012-Ohio-382, ¶ 30.

{¶ 18} Pursuant to R.C. 2151.353(A)(4), the juvenile court must satisfy a two-prong test to grant permanent custody in the original dispositional order. The juvenile court must: (1) determine that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent by considering the factors in R.C. 2151.414(E); and (2) determine that permanent custody is in the best interest of the child by considering the factors in R.C. 2151.414(D)(1). *In re A.A.*, 12th Dist. Clermont No. CA2015-12-098, 2016-Ohio-2992, ¶ 10. The public children services agency must prove by clear and convincing evidence that the statutory standards have been met before the court may award that agency permanent custody and terminate a natural parent's constitutionally protected liberty interest in the care and custody of the child. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982).

{¶ 19} On review, an appellate court is generally limited to determining whether sufficient, credible evidence exists to support the decision to grant permanent custody. *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 22. Nevertheless, an appellate court may review the judgment as to whether it is against the manifest weight of the evidence. *In re A.A.*, 2016-Ohio-2992 at ¶ 7, citing *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19. To determine whether the judgment is against the manifest weight of the evidence, an appellate court will weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re T.P.* at ¶ 19, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

When an appellate court weighs the evidence, there exists a presumption in favor of the findings made by the finder of fact and any evidence prone to more than one construction will be construed to sustain the judgment. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25.

{¶ 20} As to the first prong, R.C. 2151.414(E) provides sixteen factors that a court may consider. If one or more of the factors exist, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" R.C. 2151.414(E). Therefore, the plain language of the statute only requires a finding of one R.C. 2151.414(E) factor to satisfy this part of the test.

{¶ 21} Here, the magistrate determined that S.H. could not be placed with either parent within a reasonable time because several of the R.C. 2151.414(E) factors were proven by clear and convincing evidence. The magistrate found that R.C. 2151.414(E)(1) applied as appellants had not substantially remedied the conditions causing the child to be placed outside of the home, therefore placement in their home could not be accomplished within a reasonable time. Appellants had failed to complete many of BCCS's recommended services. They had not received training by a professional medical provider to successfully manage S.H.'s medical condition, nor had they participated in an intensive parenting program. The psychological evaluations appellants underwent as part of the case plan revealed serious concerns about the ongoing danger appellants posed to S.H. because of their limited understanding and acceptance of S.H.'s healthcare requirements. Moreover, the magistrate found that appellants, and especially mother, demonstrated an intellectual or cognitive disability that hindered their ability to provide the proper medical care for S.H pursuant to the factor in R.C. 2151.414(E)(2). The magistrate also found that appellants had "failed to seek out the necessary course of action to reunify or see their child" even

after they resolved the criminal charges and appellants had not visited with S.H. since visitation privileges were suspended in August 2018. Consequently, appellants demonstrated a lack of commitment to the child. Therefore, the magistrate found that R.C. 2151.414(E)(4) applied.

{¶ 22} Regarding the seriousness of the health crisis, the magistrate found that R.C. 2151.414(E)(8) and (15) applied. The health crisis occurred as a result of appellants repeated withholding of proper medical treatment to S.H. Additionally, the magistrate determined that the nature of that health crisis made S.H.'s placement in appellants' home a continued threat to the child's safety.

{¶ 23} The magistrate further found that appellants did not adequately provide for S.H.'s educational and academic development. At the time the child entered the foster home, S.H. should have performed at a third-grade level based on her age. Unfortunately, S.H. functioned at a pre-school level when the foster family enrolled her in school. Therefore, S.H. required substantial remedial efforts. S.H. made significant progress to catch up, nevertheless she remains two years behind the age-appropriate school level. Therefore, the magistrate found that R.C. 2151.414(E)(14) applied.

{¶ 24} Finally, the magistrate determined that R.C. 2151.414(E)(6) applied because appellants had each been convicted of one count of endangering children, a third-degree felony in violation of R.C. 2919.22(A) for their failure to provide appropriate medical care for their child's physical condition. This led to life-threatening health complications requiring intensive hospital treatment.

{¶ 25} After our review of the record, there is sufficient, credible evidence to support the magistrate's findings pursuant to R.C. 2151.414(E). It is undisputed by appellants that they each pleaded guilty to and were convicted of endangering children, a violation of R.C.

2919.22(A), where S.H. was the victim of the criminal offense. The evidence shows that appellants entered their guilty pleas on May 21, 2019 and were sentenced on June 18, 2019. Therefore, the R.C. 2151.414(E)(6) factor is firmly established.

{¶ 26} Regarding the other factors, the foster mother testified that S.H.'s diabetes required continuous supervision throughout the day and night and that the foster family utilized sophisticated medical equipment to manage her health. Despite this constant need, S.H. had not suffered a serious health issue while in the foster home and was presently in good health. Furthermore, many of the adverse effects from the health crisis had subsided. Meanwhile, neither parent sought out BCCS's resources or dedicated training by medical professionals, although they attended support and information groups regarding diabetes.

{¶ 27} Appellants' testimonies demonstrated that they had a limited understanding of how to care for and manage S.H.'s health needs. When S.H. was first diagnosed, mother admitted that the hospital required her to receive training on the proper methods to manage S.H.'s diabetes and provided a nurse to visit them at home. Nevertheless, mother blamed the health crisis on the hospital for failing to adequately train her. Moreover, mother acknowledged that between the initial diagnosis and the manifestation of the health crisis, she took S.H. to an urgent care facility on two occasions because of S.H.'s deteriorating health but did not tell those medical providers about S.H.'s diabetic condition. Neither parent offered any further explanation for why they failed to manage S.H.'s health.

{¶ 28} Regarding S.H.'s education development, the foster mother testified that S.H.'s lower-than-normal academic performance does not stem from any developmental disabilities but is merely the result of not receiving appropriate schooling. The foster mother testified that S.H. had progressed academically while living in the foster home, but she still remained two years behind the normal grade level for her age. Again, neither appellant

offered any explanation for why they failed to provide for S.H.'s academic development. While mother testified that she practiced homeschooling, she did not provide enrollment records and the most she could testify as to the child's curriculum was that she used some schoolbooks she received from the library and took the child to museums.

{¶ 29} Consequently, it is apparent from the record that there was sufficient evidence to satisfy the first prong of the R.C. 2151.353(A)(4) test.

{¶ 30} Turning to the second prong of the test, the magistrate determined that it was in S.H.'s best interest to grant BCCS permanent custody. Pursuant to R.C. 2151.414(D)(1), a juvenile court shall consider, but is not limited to, the following five factors to determine a child's best interests:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

In considering the child's best interest, no one factor is given greater weight than the others.

*In re G.W.*, 12th Dist. Butler No. CA2019-01-003, 2019-Ohio-1586, ¶ 49.

{¶ 31} The magistrate found that it was in S.H.'s best interest to grant BCCS permanent custody. Each of the R.C. 2151.414(D)(1) factors weighed in favor of granting permanent custody. The magistrate found S.H. was bonded to the foster family and that the foster family was interested in adopting the child. The magistrate relied on the recommendation by the guardian ad litem to grant permanent custody to BCCS, although the magistrate did not conduct an interview with S.H. In addition, the magistrate found that the custodial history of the child weighed in favor of granting permanent custody because S.H. had been in the temporary custody of BCCS for almost seventeen months. The magistrate also found that there were no relatives suitable for alternative placement and appellants had not worked with BCCS to satisfactorily resolve safety and medical concerns the agency had regarding S.H.'s care in appellants' home. Finally, as discussed above, the magistrate found that R.C. 2151.414(E)(8) applied, because the child's health crisis was a result of appellants repeated withholding of medical treatment.

{¶ 32} Again, after our review of the record, there was sufficient, credible evidence to support the magistrate's findings as to S.H.'s best interest to satisfy the second prong of the R.C. 2151.353(A)(4) test. The foster mother testified that S.H. was bonded with the other members of the foster home, that S.H. no longer expressed interest in returning to appellants' home, that S.H. calls the foster parents mom and dad, and the foster parents are interested in adopting S.H. Also, the foster mother testified that S.H. had not experienced any adverse health problems while living with the foster family. The record further supports the magistrate's conclusion that S.H.'s health crisis was caused by the parents repeated failure to provide medical treatment for her health condition.

{¶ 33} Appellants specifically contest the magistrate's determination that S.H.'s

custodial history weighed in favor of permanent custody, because, they argue, BCCS's temporary custody of the child began under the separate, earlier case so that time should not have counted in the instant case. Appellants have not cited to any authority to support their position and their argument is unpersuasive. The plain language of R.C. 2151.414(D)(1)(c) instructs the court to consider, generally, the custodial history of the child. Applying the plain language of the statute, the magistrate properly considered that S.H. was in BCCS's temporary custody for a significant amount of time. *See e.g. In re A.A.*, 2016-Ohio-2992 at ¶ 17. S.H. had remained in BCCS's temporary custody since May 2, 2018. Therefore, S.H. had been in the temporary custody of BCCS for more than twelve months by the time the adjudicatory hearing was held. It was not an error for the magistrate to consider this factor.

{¶ 34} Based on the foregoing, and after carefully reviewing the record in this case, there was sufficient credible evidence to grant permanent custody to BCCS. Furthermore, the juvenile court did not clearly lose its way in weighing the evidence and deciding to grant permanent custody. Therefore, the decision was not against the manifest weight of the evidence. Accordingly, mother's second of assignment of error and father's sole assignment of error are overruled.

{¶ 35} Mother's Assignment of Error No. 1:

{¶ 36} THE TRIAL COURT'S DECISION TO DENY PARENTING TIME DURING THE CASE WAS AN ABUSE OF DISCRETION WHICH PRECLUDED PARENTS FROM WORKING TOWARD REUNIFICATION

{¶ 37} In her first assignment of error, mother argues that the juvenile court erred by not allowing visitation of S.H. during the pendency of the case because this necessarily undermined reunification prospects.

{¶ 38} "While regular and frequent visitation between children and parents is

encouraged, juvenile courts have the discretion to deny visitation in exceptional cases." *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 23. Therefore, an appellate court reviews the decision to terminate parental visitation for an abuse of discretion. *Id.* at ¶ 24. An abuse of discretion is more than an error of judgment or law, it is a decision that is unreasonable, arbitrary, or unconscionable. *Id.* However, mother did not submit this error to the juvenile court as one of her objections to the magistrate's decision pursuant to Juv.R. 40(D)(3)(b). Therefore, a plain error review applies to this assigned error. Juv.R. 40(D)(3)(b)(iv). In civil cases, plain error is only found in exceptional circumstances where error, to which no objection was made at the trial level, "'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re B.J.*, 12th Dist. Butler No. CA2011-10-192, 2012-Ohio-3127, ¶ 9, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), paragraph one of the syllabus.

{¶ 39} The record shows that mother's visitation privileges were initially suspended in August 2018 because of her repeated violations of the visitation center's rules. One of the noted violations was mother surreptitiously brought scissors into the visitation center and cut S.H.'s hair, despite being told by the staff not to cut her hair. Another violation was mother discussed inappropriate topics with S.H., such as, asking S.H. where the foster family lived, downplaying the seriousness of S.H.'s medical condition, and casting suspicion on S.H.'s safety in an upcoming vacation trip with the foster family.

{¶ 40} Then, in September 2018, the juvenile court ordered appellants to have no contact with S.H. as a result of their pending criminal charges. This no-contact order was continued in February 2019 when BCCS filed its complaint in the instant matter, however, on February 14, 2019 the magistrate issued a written order in which the court allowed for

visitation privileges to be "liberalized" by agreement with BCCS and the guardian ad litem.[2] In August 2019, at the adjudicatory hearing, appellants further requested a reinstatement of visitation privileges. Despite some reservations by the magistrate, the magistrate again provided for a liberalization of visits in the adjudication order.

{¶ 41} After review of the record, it was not an abuse of discretion, much less plain error, for the juvenile court to limit visitation as it did. When the visits were initially suspended, mother was found to have violated the visitation center's rules of conduct. While mother argues that the initial reasons for suspending visitation were essentially trivial, she does not deny that she violated the visitation center's rules. Neither does mother contest the juvenile court's grounds for issuing the no-contact order. Furthermore, the record establishes that the juvenile court provided that visitation may be "liberalized" should appellants demonstrate to BCCS that they could safely and appropriately conduct themselves during a visit. Mother has not pointed to anything in the record to show she contacted the agency to so demonstrate her ability to appropriately conduct herself. Therefore, the juvenile court did not err when it initially suspended and then limited mother's visitation privileges. Accordingly, mother's first assignment of error is overruled.

{¶ 42} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.

---

2. This magistrate's order states that it was in response to a hearing held February 14, 2019. However, there is no transcript for this proceeding in the record.