[Cite as *In re N.A.*, 2023-Ohio-3465.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| N.A. fka N.M. | : | CASE NO. CA2023-04-023 |
| | : | O P I N I O N<br>9/28/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2022 JC 05504

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Denise S. Barone, for appellant.

**PIPER, J.**

{¶ 1} Appellant ("Father") appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of his child, N.A., to appellee, Clermont County Department of Job and Family Services ("CCDJFS"). The child's mother ("Mother") did not appeal.

**Facts and Procedural History**

{¶ 2} On June 21, 2022, CCDJFS filed a complaint alleging N.A., a boy born just four days earlier, was a dependent child. The complaint stated that Mother and N.A. tested positive for methamphetamine and nonprescribed oxycodone. Mother admitted that she used methamphetamine during pregnancy. In addition, Mother gave an invalid address to hospital staff and there were concerns that she was homeless. The complaint stated that Mother has had three children permanently removed. Father is the biological father of one of those children. CCDJFS was unable to identify any relative who could care for N.A. and alleged that N.A. was at imminent risk of serious harm. CCDJFS requested permanent custody as part of the original complaint.

{¶ 3} N.A. was adjudicated dependent and placed in a foster home. On July 21, 2022, CCDJFS filed a motion requesting an order that reasonable efforts to reunify were not required due to the prior involuntary termination of Mother and Father's parental rights. The trial court granted the agency's request. In so doing, the trial court found that neither parent had been in contact with the agency to address the concerns leading to removal.

{¶ 4} On September 2, 2022, a permanent custody hearing was held before the magistrate. The caseworker, Rebecca Moore, testified that N.A. tested positive for methamphetamine and oxycodone at birth. Mother admitted to using methamphetamine while she was pregnant. Moore stated that Mother and Father were known to the agency. After N.A. was released from the hospital, he was placed in the same foster home as one of his biological siblings. Moore testified Mother and Father did not maintain contact with the agency for the first six weeks of the case. Moore testified that neither parent had any visitation with N.A. and Father had only recently inquired to see N.A. She noted that Mother and Father were currently in a drug treatment facility and doing well but expressed concern that neither parent had any means to take care of N.A. Moore testified that Mother and

Father do not have a place to live and have had substance abuse problems for years without any changes. Moore additionally testified that N.A. was doing well in foster care and was safe and secure in a stable environment.

{¶ 5} Father testified that he was 43 days sober in a drug treatment facility. He stated that he has been struggling with drug addiction for several years. He also reported having mental health issues that had been left unaddressed until recently. Father stated that he hoped to get a career again but was unsure what he might be able to pursue. He had most recently been working as a part-time landscaper. Father admitted that he had been to jail multiple times for domestic violence against Mother.

{¶ 6} Mother testified that she has also struggled with drug addiction for several years. She stated that she was in the same drug treatment facility as Father and had been sober for 41 days. Mother testified that she has been taking medication for her mental health issues. Mother hoped to eventually move to transitional care where she would receive housing assistance. She agreed that she had been to jail for domestic violence against Father. Mother stated that she was not currently in a relationship with Father but would not rule it out in the future.

{¶ 7} Brandy Estep, a case management specialist at the drug treatment facility, testified about Mother and Father's progress within the program. Estep generally explained the type of services provided and steps necessary to advance in the program. She testified that Mother and Father were both doing well.

{¶ 8} Following the hearing, the magistrate issued a decision recommending permanent custody be granted to CCDJFS. Father objected to the magistrate's decision while Mother did not. The trial court found a discrepancy between the initial complaint and N.A.'s birth certificate. The parties had previously referred to N.A., as N.M., mother's surname, while his birth certificate showed that his initials were N.A.

{¶ 9}   The trial court held an emergency hearing where the court heard testimony from Carla Severini, an employee of CCDJFS.  Severini testified as to N.A.'s correct name.  She informed the court that N.A. was in the agency's care and his needs were being met.

{¶ 10} The trial court permitted the agency to file an amended complaint to correct N.A.'s name.  The trial court rejected the magistrate's decision because of the name discrepancy.[1]  On April 3, 2023, the trial court held another permanent custody hearing. Mother and Father failed to appear.  Mother's counsel informed the court that he had attempted to contact Mother multiple times but was unable to get a response.  Father's counsel stated Father was no longer a patient at the drug treatment facility.  CCDJFS submitted the transcript of the prior permanent custody hearing for the court's consideration. The court also heard evidence from Severini who testified about the agency's unsuccessful attempts to contact Mother and Father.  Severini also stated that N.A. had recently moved to a different foster home and was doing well in the new placement.  N.A. is required to wear a helmet to correct a health condition but was otherwise happy and healthy.  After taking the matter under advisement, the trial court issued a written decision granting permanent custody of N.A. to CCDJFS.  Father timely appealed.

**Appeal**

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF [FATHER] WHEN IT GRANTED THE STATE'S MOTION FOR PERMANENT CUSTODY.

{¶ 12} In his sole assignment of error, Father argues the trial court's decision granting permanent custody of N.A. to CCDJFS was based upon insufficient evidence and was against the manifest weight of the evidence.  He requests that this court vacate the permanent custody decision and place N.A. in his care.

---

1.  The trial court stated it was concerned about future complications that could arise as a result of the discrepancy.

**Permanent Custody**

{¶ 13} "A public children services agency may seek permanent custody of a child in an abuse, neglect, or dependency proceeding in one of two ways." *In re S.H.*, 12th Dist. Butler Nos. CA2020-02-023 and CA2020-02-024, 2020-Ohio-3499, ¶ 17. "An agency may either (1) obtain temporary custody of the child and then file a motion for permanent custody, or (2) request permanent custody as part of its original abuse, neglect, or dependency complaint." *In re R.B.*, 12th Dist. Butler Nos. CA2022-01-003 and CA2022-01-004, 2022-Ohio-1705, ¶ 30.

{¶ 14} CCDJFS sought permanent custody in its complaint and therefore the statutory provision of R.C. 2151.353(A)(4) applies. Pursuant to R.C. 2151.353(A)(4), a juvenile court must apply a two-prong test. *In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 23. First, using the factors in R.C. 2151.414(E), the court must determine that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re A.A.*, 12th Dist. Clermont No. CA2015-12-098, 2016-Ohio-2992, ¶ 10. Second, using the factors in R.C. 2151.414(D)(1), the court must determine that permanent custody is in the best interest of the child. *Id.* The public children services agency must prove by clear and convincing evidence that the statutory standards have been met before the court may award permanent custody to the agency and terminate a natural parent's constitutionally protected liberty interest in the care and custody of the child. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11.

{¶ 15} On review, an appellate court is generally limited to determining whether sufficient, credible evidence exists to support the decision to grant permanent custody. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. Nevertheless, an appellate court may review the judgment as to whether it is against the

manifest weight of the evidence. *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19. In determining whether a trial court's decision to grant a motion for permanent custody is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-094 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

### R.C. 2151.414(E) Factors

{¶ 16} As to the first prong, R.C. 2151.414(E) provides 16 factors that a court may consider. If one or more of the factors exist, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" R.C. 2151.414(E). Therefore, the plain language of the statute only requires a finding of one to satisfy this part of the test. *In re S.H.*, 2020-Ohio-3499 at ¶ 19.

{¶ 17} Here, the trial court determined that N.A. could not be placed with either parent within a reasonable time because several of the R.C. 2151.414(E) factors were proven by clear and convincing evidence. The trial court found that R.C. 2151.414(E)(1) applied as Mother and Father failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside of the home. N.A. was removed because neither parent was capable of caring for N.A. who was born with drugs in his system. N.A.'s parents have a lengthy history of drug addiction. They recently had their parental rights involuntarily terminated regarding another child due to failure to engage in services necessary for reunification. While this time Mother and Father entered a drug treatment facility and demonstrated progress, there is no indication they successfully

completed their programs or maintained their sobriety. After the magistrate's decision, Mother and Father disappeared. The trial court stated that the child "need not wait for the parents to cease their long-time behavior."

{¶ 18} The trial court also found that R.C. 2151.414(E)(2) applied, as the parents' long term substance abuse issues led to homelessness, unemployment, and poverty. As to R.C. 2151.414(E)(4), the trial court stated that Mother and Father have had no involvement or contact with N.A. since he was placed in foster care shortly after his birth. Addressing R.C. 2151.414(E)(9), the trial court found Mother placed N.A. at substantial risk of harm with her drug use during pregnancy.

{¶ 19} In addressing R.C. 2151.414(E)(11), the trial court found both parents had previously had their parental rights involuntarily terminated with regard to another child. The agency submitted a certified copy of the order that showed Mother and Father had their parental rights terminated involuntarily in October 2021 with regard to their daughter, A.A. There was no evidence either parent could provide a legally secure placement to adequately care for N.A. notwithstanding the prior termination.

{¶ 20} Finally, the trial court considered R.C. 2151.414(E)(16), which provides for consideration of any other factor. The trial court again stated that Mother and Father were fighting drug addiction problems. Significantly, after the magistrate's decision, Mother and Father did not contact the agency again. The trial court noted that their whereabouts could not be confirmed, they did not appear for court, and they failed to contact their attorneys. Based upon these considerations, the trial court found that N.A. could not be placed with either parent within a reasonable time and should not be placed with either parent.

{¶ 21} Father argues the trial court's decision was against the manifest weight of the evidence because the state failed to adequately establish that a prior permanent custody trial had been held in Brown County. Yet, he fails to explain why a certified copy of that

judgment entry entered into the record fails to meet that standard. Moreover, it is not clear what, if any, aspect of the trial court's decision he is appealing with regard to the trial court's first prong of the analysis. Having his parental rights involuntarily terminated is but one of the R.C. 2151.414(E) factors. Father presents no specific argument to the other factors. As we noted above, the plain language of the statute only requires a finding of one factor to satisfy this part of the test. *In re S.H.*, 2020-Ohio-3499 at ¶ 20. The only argument that can be gleaned from Father's brief is his summary argument that he "was diligently trying to regain custody of his son by enrolling in a rehabilitation treatment centers." [sic].

{¶ 22} However, following review of the record, we find there is sufficient, credible evidence to support the trial court's findings pursuant to R.C. 2151.414(E) and that decision was not against the manifest weight of the evidence. The evidence shows that Mother and Father's drug addictions have consumed their lives. The state presented evidence that Mother and Father have had their parental rights involuntarily terminated because of their inability to care for their other child. These issues continued through Mother's pregnancy with N.A. When N.A. was born with drugs in his system there was no opportunity for a safe, stable environment other than foster care. For approximately six weeks, Mother and Father had no contact with the agency. They later were admitted to a drug treatment facility. However, after issuance of the magistrate's decision, Mother and Father again failed to maintain contact with the agency and their whereabouts were unknown. They have not seen N.A. since he was in the hospital. Simply, there is overwhelming evidence to satisfy the first prong of the R.C. 2151.353(A)(4) test. Therefore, we move to consideration of the best interest factors.

### Best Interest Factors

{¶ 23} When considering the best interest of a child in a permanent custody hearing, the trial court is required under R.C. 2151.414(D)(1) to consider all relevant factors. This

includes, but is not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 24} In granting the motion for permanent custody, the trial court considered each of the best interest factors in light of the evidence presented at the hearing. The trial court found that N.A. was placed in a foster home after he was released from the hospital. N.A. has had no contact with either parent since that time. As stated above, neither parent communicated with the agency at the beginning of the case. They entered a drug treatment facility where they had some contact with the agency. However, they simply disappeared after the magistrate's decision was issued.

{¶ 25} At the time the trial court issued its decision, N.A. was only nine months old but had not seen his parents since he was released from the hospital. He was unable to express his wishes due to his young age. The GAL recommended that CCDJFS be granted permanent custody.

{¶ 26} The trial court reviewed the custodial history of N.A. and found he had been in the temporary custody of the agency since his release from the hospital. N.A. was doing well in foster care. The trial court also considered N.A.'s need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to CCDJFS.

{¶ 27} Finally, the court found that R.C. 2151.414(E)(9), regarding drug use, and

R.C. 2151.414(E)(11), regarding the prior termination of parental rights, applied in this case. After weighing the evidence, the trial court found by clear and convincing evidence that it was in N.A.'s best interest to grant permanent custody to CCDJFS.

{¶ 28} Father again presents only conclusory arguments in support of his appeal. With regard to the trial court's best interest determination, he merely claims that "[i]t was clearly not in N.A.'s best interest for his father's rights to be permanently severed."

{¶ 29} We have thoroughly reviewed the evidence in this case and find that the trial court's determination regarding the best interest of N.A. is supported by clear and convincing evidence and was not against the manifest weight of the evidence. As this court has repeatedly stated, a trial court is not required to experiment with a child's welfare. *In re B.K.F.*, 12th Dist. Butler No. CA2016-04-078, 2016-Ohio-5474, ¶ 21. In this case, neither Mother nor Father showed they could be adequate providers of a safe and stable environment. It is clear both parents have substantial ongoing drug problems that have created pervasive issues with securing housing, employment, and any semblance of stability. The trial court was correct in determining that N.A.'s best interest is served with an award of permanent custody to the agency.

## Conclusion

{¶ 30} We conclude the trial court did not err by granting permanent custody in favor of CCDJFS. The trial court's decision was supported by sufficient credible evidence and the decision was not contrary to the manifest weight of the evidence. Father's sole assignment of error of error is overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.