[Cite as *In re K.A.*, 2016-Ohio-7911.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF:                           :

      K.A.                                   :          CASE NO.   CA2016-07-140

                                             :          O P I N I O N
                                                        11/28/2016

                                             :

                                             :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0362


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

Amy Ashcraft, P.O. Box 172, Seven Mile, Ohio 45062, guardian ad litem

Heather A. Felerski, P.O. Box 181342, Fairfield, Ohio 45018, for appellant, Mother

Michael O. Finnigan, 9475 Kenwood Road, Suite 12, Cincinnati, Ohio 45242, guardian ad litem for appellant, Mother


      **RINGLAND, J.**

      **{¶ 1}**   Appellant, the biological mother of K.A. ("Mother"), appeals a decision of the

Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of K.A.

to appellee, the children services division of the Butler County Department of Job and Family

Services ("agency"). For the reason detailed below, we affirm.

{¶ 2} In July 2013, the agency filed a dependency complaint and requested temporary custody of K.A., who was then two days old. The complaint alleged that K.A. tested positive for benzodiazepines the day he was born. Later testing indicated that K.A. also tested positive for marijuana. The complaint alleged that the agency was seeking permanent custody of K.A.'s three siblings, who had previously been adjudicated as neglected and dependent and were in the temporary custody of the agency.

{¶ 3} The juvenile court granted temporary custody of K.A. to the agency and placed him in foster care. The court later adjudicated K.A. an abused and dependent child, named Mother the perpetrator of the abuse, and continued temporary custody with the agency. K.A. lived with the same foster family for two years while this case was pending.

{¶ 4} Mother's case plan for reunification included continuing therapy to treat her significant mental health and behavioral issues. A psychologist diagnosed Mother with a mood disorder, post-traumatic stress disorder, and bipolar disorder. Mother has a long history of combative, and aggressive behavior, especially towards employees of the agency.

{¶ 5} Mother's case plan called for her to maintain stable housing and income. The case plan further required that K.A. would participate in an assessment by "Help Me Grow," which is an organization that performs developmental screenings on children. However, Mother struggled with various aspects of her case plan. In December 2014, approximately 18 months after K.A.'s birth, the agency moved for permanent custody.

{¶ 6} At the permanent custody hearing, the agency introduced the testimony of numerous witnesses, including the social worker assigned to the case and other agency staff, a psychologist who assessed Mother, staff at Help Me Grow, and K.A.'s foster parent. Mother testified in support of her case and also called her therapist and sister to testify, both of whom stated that Mother should be granted custody. K.A.'s guardian ad litem prepared a

written report in which she recommended permanent custody be granted to the agency.

{¶ 7} The juvenile court magistrate rendered a decision finding that it was in K.A.'s best interest to be placed in the permanent custody of the agency. Mother filed objections, which the juvenile court overruled. Mother now appeals the juvenile court's decision granting permanent custody to the agency, raising one assignment of error for our review:

{¶ 8} THE TRIAL COURT'S DECISION TO PLACE [K.A.] IN THE PERMANENT CUSTODY OF BUTLER COUNTY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶ 9} Mother argues the juvenile court's decision granting permanent custody of K.A. to the agency was not in K.A.'s best interest. Mother contends that the decision was not supported by sufficient clear and convincing evidence and was otherwise against the manifest weight of the evidence. After a thorough review of the record, we find Mother's assignment of error is without merit.

{¶ 10} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); R.C. 2151.414(B)(1). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 11} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First,

the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *Id.* Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22–month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *Id.*

{¶ 12} In this case, the juvenile court found by clear and convincing evidence that K.A. had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody. Mother does not dispute this finding. Rather, Mother contests the juvenile court's finding that granting permanent custody of K.A. to the agency was in his best interest.

{¶ 13} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 14} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that K.A had been in the custody of the agency since three days after his birth and his only interactions with Mother were through periodic visitations. Nearly all visitations occurred in a facility setting and were closely supervised. Mother consistently visited with K.A. twice a week and for the most part her behavior at these visits was appropriate. Moreover, reports of the visits demonstrated that Mother and K.A. were bonded. But during some of these visits Mother lost the ability to control her anger, which would distract her from K.A. Any number of matters could lead to angry outbursts, including the dietary restrictions imposed by K.A.'s physician, the supervisor of the visitation facility, and the appearance of the agency director at the facility. Still, the juvenile court did not find that Mother's anger had a "meaningful effect" on the relationship between her and K.A. The juvenile court also found that K.A. has a loving relationship with his foster family, who was meeting all of his medical and therapeutic needs.

{¶ 15} In consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that due to K.A.'s age it did not conduct an *in camera* interview. The guardian ad litem recommended that custody be permanently granted to the agency. The guardian noted that while Mother had made great strides in her ability to control her anger, she remained in the same environment that triggered her uncontrollable fits of anger. Moreover, Mother still had

frequent contact with the police, had a temporary restraining order filed against her by her sister, and lived in five separate residences during the pendency of the custody case. Mother also continued to deny any wrongdoing in the case, including the presence of drugs in her newborn baby. In sum, the guardian surmised that while Mother had made some improvements, they were not enough to merit placing K.A. into Mother's chaotic world.

{¶ 16} In considering R.C. 2151.414(D)(1)(c), the juvenile court reviewed K.A.'s custodial history. The juvenile court found K.A. was adjudicated abused and dependent and had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 17} With respect to R.C. 2151.414(D)(1)(d), the juvenile court found K.A. is in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way K.A.'s needs can be achieved.

{¶ 18} The juvenile court noted that K.A., who was then two and one-half years old, had never lived in the physical custody of either his mother or father and had spent his entire life in foster care, but fortunately all with the same foster family.

{¶ 19} Mother's case plan required her to continue therapy to treat her mental health problems. The juvenile court noted that the therapist's reports indicated that Mother was improving at socially appropriate behavior. However, the therapist's descriptions of Mother's positive interactions with those involved in her custody cases were based on Mother's self-reporting. The court also noted that it appeared that the therapist was unaware of the extent of Mother's numerous and regular contacts with the police in the two years following K.A.'s birth.

{¶ 20} The juvenile court further noted that Mother's case plan required her to participate in a psychological evaluation. Initially, she refused. Five months after the juvenile court filed the case plan, Mother relented and submitted to an evaluation. The treating

psychologist diagnosed Mother with numerous personality disorders. His report indicated that mother could become "belligerent, voicing irrational but interconnected delusions of a persecutory, grandiose, or jealous nature. Her mood may usually be hostile, and she may be quick to feel picked on and mistreated. * * * [She] may sometimes exhibit signs of disturbed thinking and ideas of reference."

{¶ 21} The juvenile court observed that Mother also completed a psychiatric evaluation. The assessment concluded that Mother's mental health issues did not preclude her from performing her parental responsibilities. But the juvenile court noted that Mother had not provided the evaluator with accurate information concerning her history. For instance, the report described her legal history as having a felonious assault charge in 2011 but no further "incidents of violence" that time. But in fact, Mother had an extensive history of being involved in assaultive conduct since 2011, and most recently in May of 2015.

{¶ 22} The juvenile court found that Mother had technically complied with the requirements in her case plan to improve her mental health by attending therapy sessions, although the percentage of sessions she missed (28%) was concerning. However, the juvenile court found that Mother's mental health issues that were present before removal still existed and were significant.

{¶ 23} The juvenile court noted that Mother participated in the "Wraparound" program, but her involvement was terminated because of her anger and belligerence toward the service provider's representatives.

{¶ 24} The juvenile court noted that in the two and one-half years since K.A.'s birth, Mother had lived in five residences. The court also found that Mother's monthly income from social security and food stamps was about $886. Based on Mother's testimony, the juvenile court found that Mother's monthly expenses exceeded her income.

{¶ 25} Mother's case plan required K.A. to participate in the Help Me Grow program

and to follow all recommendations. The juvenile court noted that Mother consented to the initial program screening. The screening indicated K.A. was delayed in four of five test areas. As a result, Help Me Grow recommended further evaluation and a referral to other providers. However, Mother refused these services and revoked her consent. Later, Mother provided consent and Help Me Grow performed a second assessment. But when a Help Me Grow employee called to discuss K.A.'s need for services, Mother verbally abused and threatened the employee. She then refused to allow K.A. to participate in any further services with Help Me Grow.

{¶ 26} The juvenile court noted that the Help Me Grow assessment identified some issues with stiffness in K.A.'s legs, vision problems, and possible cerebral palsy. K.A.'s foster mother and the agency's social worker were ensuring that K.A. saw the appropriate medical professionals, including a pediatrician, rehabilitation specialist, and ophthalmologist.

{¶ 27} The juvenile court found that K.A. was diagnosed with certain food allergies. Mother disputed this diagnosis and tried to feed K.A. in violation of his dietary restrictions during the supervised visits. Attempts to enforce K.A.'s dietary restrictions by visitation employees were met with anger and aggressive behavior by Mother

{¶ 28} The juvenile court noted that a "recurring theme" in Mother's visitations with K.A. was her anger and aggression. At the visitations, Mother repeatedly demonstrated an inability to control her emotions. Any number of issues would trigger an inappropriate response by Mother, including her disagreements concerning K.A.'s dietary restrictions, the manner in which K.A. was being cared for, and K.A.'s medical issues. The court noted that these concerns and Mother's reactions went beyond normal parental concerns. Still, the juvenile court noted that many of the visits were positive experiences and took place without incident.

{¶ 29} The juvenile court found that Mother's issues with anger and belligerence had

caused other problems in her reunification plan. For instance, the agency stopped making home visits to Mother's residences because of its employees' concerns of being assaulted. And Mother's own family members took out restraining orders against her. Ultimately, the juvenile court found that Mother's anger was of such a "pervasive" and "unpredictable" nature that it would interfere with all aspects of her life and her ability to provide a safe and stable environment in which to raise K.A.

{¶ 30} The juvenile court noted that four individuals requested home studies to determine if K.A. could be placed with them. But the agency found none of the applicants appropriate. No other relative or person filed a motion for custody.

{¶ 31} The juvenile court found that the agency could provide the necessary legally secure permanent placement for K.A. The court noted that it was "theoretically possible" that Mother could fully commit to her mental health treatment to change her aggressive behavior and maintain stable income and housing for K.A. Nonetheless, the juvenile court observed that Mother had been in therapy for over five years and her behavior issues had not significantly reduced. During that span of time, Mother lost custody of three of K.A.'s older siblings.[1] Accordingly, the juvenile court concluded that it was unlikely that Mother could resolve her issues in the foreseeable future.

{¶ 32} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that Mother had her parental rights terminated with respect to one of K.A.'s older siblings in August 2013.

{¶ 33} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of K.A. was supported by

---

1. The juvenile court granted permanent custody of one of K.A.'s siblings to the agency and legal custody of two other siblings to relatives. This court affirmed the decision. *In re K.B.*, 12th Dist. Butler Nos. CA2014-02-042, CA2014-02-043 and CA2014-02-044, 2014-Ohio-3654.

clear and convincing evidence and was not against the manifest weight of the evidence. Mother and K.A. are bonded and Mother has complied with the case plan to an extent. There is also no evidence in the record that Mother ever directed her angry outbursts at K.A. during a supervised visit.

{¶ 34} However, the record indicates that Mother has long-standing, persistent, and still unresolved mental health issues involving fits of rage and uncontrollable anger that prevent her from providing a stable environment in which to raise K.A. Mother also appears to be in denial concerning her behavior, the reason the agency assumed custody of her child, her numerous encounters with police, and her criminal convictions. Mother also demonstrated that she has dangerous delusions concerning her son's health and dietary restrictions. Mother has had three other children removed from her custody, including one for whom she has had her parental rights terminated. In the present case, there are compelling reasons to weigh the best interest factors in favor of granting permanent custody to the agency.

{¶ 35} The evidence showed that K.A. is bonded with his foster family and shares a strong bond with his foster sister, who is also a foster child and is about the same age. The foster mother and K.A.'s caseworker have seen to his medical needs. And the foster parent testified that she would be willing to adopt K.A. Therefore, we find the juvenile court's decision was supported by the evidence and we find no error in the juvenile court's decision to grant permanent custody to the agency. Mother's sole assignment of error is overruled.

{¶ 36} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.