[Cite as *In re R.B.*, 2022-Ohio-1705.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN RE:                                          :

    R.B., et al.                          :           CASE NO. CA2022-01-003
.                                                                                CA2022-01-004
                                                :
                                                            O P I N I O N
                                                :           5/23/2022

                                                :

                                                :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2018-0089; JN2018-0090

Sebaly Shillito & Dyer, and Brian A. Muenchenbach and Meghan E. Richmond, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Legal Aid Society of Southwest Ohio, LLC, and Jonathan W. Ford and Emily Edwards, guardian ad litem.

**S. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals from the decision of the Butler County Court of

Common Pleas, Juvenile Division, granting permanent custody of her two children, R.B.

and B.C., to appellee, Butler County Department of Job and Family Services ("BCDJFS"). For the reasons outlined below, we affirm the juvenile court's decision.

## The Parties

{¶ 2} Mother is the biological mother of the two children at issue in this case, boys, R.B., born September 24, 2009, and B.C., born August 25, 2014. Neither R.B.'s father nor B.C.'s father are parties to this appeal.

## Facts and Procedural History

{¶ 3} On March 13, 2018, BCDJFS filed separate complaints alleging both R.B. and B.C. were abused and dependent children. The record indicates BCDJFS filed these two complaints after it received a referral alleging R.B. and B.C. had been sexually abused and the victims of sex trafficking by Mother and her then boyfriend, J.H. This includes instances where it was alleged the then eight-year-old R.B. was forced to have vaginal and anal intercourse with his 11-year-old cousin. This is in addition to BCDJFS alleging Mother had admittedly used several illegal substances while R.B. and B.C. were in her care, including methamphetamine, heroin, and marijuana, and that an officer with the Middletown Police Department had discovered a text message from B.C.'s father threatening to kill R.B. The record indicates Mother also admitted to having significant mental health issues that had resulted in Mother attempting suicide on more than one occasion.

{¶ 4} On July 2, 2018, the juvenile court adjudicated both R.B. and B.C. as dependent children. That same day, the juvenile court held dispositional hearings for R.B. and B.C. Once those dispositional hearings concluded, the juvenile court issued two dispositional decisions granting temporary custody of R.B. and B.C. to BCDJFS. There is no dispute that, despite the 90-day time requirement set forth in the now former R.C. 2151.35(B)(1), more than 90 days had passed between when BCDJFS filed its complaints

alleging R.B. and B.C. were abused and dependent children and when the juvenile court held its dispositional hearings for R.B. and B.C.[1]  There is also no dispute that Mother did not object to the juvenile court holding its dispositional hearings for R.B. and B.C. outside of that 90-day timeframe.  There is further no dispute that neither Mother, nor either R.B.'s or B.C.'s fathers, appealed from the juvenile court's dispositional decisions granting temporary custody of R.B. and B.C. to BCDJFS.

{¶ 5}  On January 23, 2020, BCDJFS filed motions for permanent custody of both R.B. and B.C.  In its motions for permanent custody, BCDJFS noted that R.B. and B.C. had at that point been in its temporary custody for 12 or more months of a consecutive 22-month period.  After BCDJFS filed its motions for permanent custody, a three-day hearing on BCDJFS' motions was held before a juvenile court magistrate.  This three-day hearing ultimately concluded on February 3, 2021.  On the second day of that three-day hearing, which was held on October 6, 2020, Mother orally moved the magistrate to dismiss the abuse and dependency complaints DCDJES had filed with the juvenile court on March 13, 2018.  To support her motion, Mother argued the juvenile court lacked subject-matter jurisdiction to proceed once it failed to hold its dispositional hearings for R.B. and B.C. within the 90-day time limit set forth by former R.C. 2151.35(B)(1).  Upon hearing arguments from both parties, the magistrate denied Mother's motion from the bench.

{¶ 6}  On March 15, 2021, Mother filed two written motions requesting the juvenile court dismiss the March 13, 2018 complaints regarding R.B. and B.C.  To support these motions, Mother set forth the same arguments she had previously raised to the magistrate in support of her October 6 oral motion to dismiss, i.e., the juvenile court lacked subject-

---

1. Based on this court's calculations, there were 111 days that elapsed between March 13, 2018 and July 2, 2018.

- 3 -

matter jurisdiction to proceed once it failed to hold its dispositional hearings for R.B. and B.C. within the 90-day time limit set forth by former R.C. 2151.35(B)(1). Approximately three weeks later, on April 5, 2021, the magistrate issued two separate orders denying Mother's motions to dismiss in both R.B.'s and B.C.'s cases. In so holding, the magistrate found there was at that time no case law supporting Mother's claim that the juvenile court's failure to abide by the 90-day limit set forth in former R.C. 2151.35(B)(1) "can act to deprive a court of subject matter jurisdiction." The magistrate also determined that there was nothing at that time indicating "the time limits in Section 2151.3 *et seq.* are jurisdictional in nature."

{¶ 7} On April 18, 2021, Mother filed motions requesting the juvenile court "set aside" the magistrate's decisions denying her motions to dismiss R.B.'s and B.C.'s cases. The next day, April 19, 2021, the magistrate issued separate decisions recommending the juvenile court grant BCDJFS' motions for permanent custody of R.B. and B.C. In reaching these decisions, the magistrate noted that Mother had abandoned both R.B. and B.C. given her lack of any contact with either child for more than a year after they were removed from her care. The magistrate also noted within its decisions that both R.B. and B.C. had a "solid nurturing relationship with [their] foster parents" and that R.B.'s and B.C.'s foster parents were interested in adoption if permanent custody was granted to BCDJFS. The magistrate also stated within each of its decisions, the following:

> In conclusion, it is clear that mother had an extremely difficult and abusive childhood. It appears that her history followed her as she attempted to be a mother for [R.B. and B.C.]. She clearly loves [both R.B. and B.C.], but her personal issues, such as substance abuse and mental health, prevented her from putting that love into appropriate action when [they were] in her care. As a result, [R.B. and B.C. were] where [they were]; physically, emotionally, and mentally, when [they were] removed from her care.

Mother has made strides towards becoming healthy and independent. What she has done so far in that regard has not been easy and she appears to be turning her life around. * * * In terms of her relationship with [R.B. and B.C.], however, the damage has been done. Her absence in [their lives] for over a year after [they were] removed from her care only served to exacerbate that damage.

{¶ 8} On May 3, 2021, Mother filed objections to the magistrate's decisions in both R.B.'s and B.C.'s cases. Mother later supplemented her objections to the magistrate's decisions on July 22, 2021. As part of her objections, Mother alleged the juvenile court lacked subject-matter jurisdiction and/or the legal authority to grant permanent custody of R.B. and B.C. to BCDJFS "because it failed to dispose of the case[s] within 90 days of filing * * *." The juvenile court issued decisions overruling Mother's objections to both of the magistrate's decisions on November 23, 2021. The juvenile court also denied Mother's motions requesting the juvenile court "set aside" the magistrate's decisions denying her motions to dismiss. The following month, on December 20, 2021, Mother filed timely notices of appeal from both juvenile court's decisions overruling her objections to the magistrate's decisions in R.B.'s and B.C.'s cases. Mother raises three assignments of error for review.

**Assignment of Error No. 1:**

{¶ 9} THE TRIAL COURT LACKED JURISDICTION TO TERMINATE APPELLANT'S PARENTAL RIGHTS.

{¶ 10} In her first assignment of error, Mother argues the juvenile court erred by denying her motion to dismiss, alleging the juvenile court lacked subject-matter jurisdiction to proceed once the juvenile court failed to hold the required dispositional hearings for R.B. and B.C. within the 90-day time limit set forth in the now former R.C. 2151.35(B)(1). We disagree.

{¶ 11} "Former R.C. 2151.35(B)(1) affects a juvenile court's authority over a

- 5 -

particular case." *In re H.M.M.*, 1st Dist. Hamilton No. C-210590, 2022-Ohio-473, ¶ 16. Pursuant to that statute:

> If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.
>
> If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.[2]

{¶ 12} The Ohio Supreme Court was recently tasked with determining whether that 90-day time limit set forth in the now former R.C. 2151.35(B)(1) was mandatory or merely discretionary. *In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995. Upon review, the Ohio Supreme Court determined that the 90-day time limit was mandatory, not discretionary, given the statutory language contained an "express limitation on a juvenile court's authority for failure to comply with a statutory deadline." *Id.* at ¶ 23. In so holding, the Ohio Supreme Court noted that "[i]f the General Assembly had intended for a juvenile court to proceed with dispositional determinations beyond the 90-day time limit in R.C. 2151.35(B)(1), it could have added language to that effect." *Id.* at ¶ 24. Therefore, because former R.C.

---

2. We note that, effective April 12, 2021, the statutory language found in R.C. 2151.35(B)(1) was amended "to allow the juvenile court under certain circumstances an additional 45 days beyond the current 90-day limit in which to hold the dispositional hearing before the complaint must be dismissed without prejudice." *In re K.R.*, 9th Dist. Summit No. 29815, 2021-Ohio-495, ¶ 12, fn. 2.

2151.35(B)(1) did not contain any such language that would allow the juvenile court to act beyond the 90-day time limit, the Ohio Supreme Court determined that "we must apply the express mandate in R.C. 2151.35(B)(1) requiring dismissal of the complaints." *Id.* at ¶ 25. The Ohio Supreme Court also determined that, because the statutory language is "explicit" in requiring dismissal after the expiration of the 90-day time limit, "there can be no implicit waiver of the 90-day limit." *Id.* at ¶ 26.

{¶ 13} Following the Ohio Supreme Court's decision in *In re K.M.*, this court decided a case where a father argued the juvenile court erred by failing to dismiss complaints alleging three children were abused, neglected, or dependent children given the juvenile court's failure to hold dispositional hearings for any of the three children within the 90-day time limit set forth in former R.C. 2151.35(B)(1).[3] *In re K.K.*, 12th Dist. Butler Nos. CA2020-12-130, CA2021-01-002, and CA2021-01-003, 2021-Ohio-1689, ¶ 7. Applying the Ohio Supreme Court's holding in *In re K.M.*, 2020-Ohio-995, this court agreed and found "the juvenile court erred by not dismissing the complaints without prejudice once it failed to hold the dispositional hearings [for the three children at issue] within 90 days as required by R.C. 2151.35(B)(1)." *Id.* at ¶ 21. In so holding, this court noted that the Ohio Supreme Court's

---

3. The Ohio Supreme Court has accepted for review this court's decision in *In re K.K.*, 2021-Ohio-1689. *See In re K.K.*, 164 Ohio St.3d 1440, 2021-Ohio-3233. The two issues accepted for review by the Ohio Supreme Court are:

> 1. The language requiring dismissal for violations of the 90-day time limit set forth in R.C. 2151.35(B)(1) is not self-executing since it requires the filing of a motion by the court, by the parties to the case, or by the child's guardian ad litem. As such, the 90-day time limit is not jurisdictional.

> 2. The decision of the Twelfth District Court of Appeals in *In re: K.K.*, 12th Dist. Butler Nos. CA2020-12-130, CA2021-01-002, & CA2021-10-003, 2021-Ohio-1689, cannot be applied retroactively to a permanency case that has resulted in a final, appealable order and is not pending on appeal.

Oral argument was held on the matter on March 30, 2022. *See* Ohio Supreme Court Case Information, Case No. 2021-0822, available at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2021/0822 (last accessed May 3, 2022).

decision in *In re K.M.*:

> specifically states that a parent cannot implicitly waive the juvenile court's requirement to hold the dispositional hearing within 90 days of the filing of the complaint and that a juvenile court must dismiss the complaint without prejudice should it fail to hold the dispositional hearing within the 90-day time frame, whether or not any party raises the issue.

*Id.* at ¶ 14.

{¶ 14} The facts in *In re K.K.* are nearly identical to the facts at issue here. In this case, just like for the three children at issue in *In re K.K.*, the juvenile court did not hold the dispositional hearings for R.B. and B.C. within the 90-day time limit in former R.C. 2151.35(B)(1). Moreover, just like the mother and father in *In re K.K.*, neither Mother nor either R.B.'s or B.C.'s fathers in this case expressly waived that 90-day time limit. However, although dealing with nearly identical facts, we believe *In re K.K.* incorrectly determined that a juvenile court is divested of subject-matter jurisdiction to proceed when the juvenile court does not hold the necessary dispositional hearing(s) within 90 days as required by former R.C. 2151.35(B)(1). *See id.*, 2021-Ohio-1689 at ¶ 20 (holding a challenge to the juvenile court's authority to proceed after the juvenile court failed to hold a dispositional hearing within 90 days as required by former R.C. 2151.35[B][1] can be raised at any time, even for the first time on appeal, given the well-settled principle that "attacks on subject-matter jurisdiction cannot be forfeited"). Therefore, for the reasons outlined below, and to the extent that this court's decision in *In re K.K.*, either expressly or implicitly, determined that a juvenile court is divested of subject-matter jurisdiction to proceed when the juvenile court does not hold the necessary dispositional hearing(s) within 90 days of the filing of a complaint alleging that a child is abused, neglected, or dependent as required by the now former R.C. 2151.35(B)(1), that part of our decision is overruled and will no longer be followed by this court.

{¶ **15**} "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). "Ohio's juvenile courts are statutory courts, created by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 14. Because of this, "[j]uvenile courts are courts of limited jurisdiction whose powers are created solely by statute." *In re S.M.*, 12th Dist. Madison No. CA2009-02-008, 2009-Ohio-4677, ¶ 14, citing *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, ¶ 25. "The termination of parental rights is statutory and governed by R.C. 2151.414." *In re J.G.*, 8th Dist. Cuyahoga No. 110745, 2022-Ohio-827, ¶ 27. Thus, because it is Ohio's juvenile courts that have the power to terminate an individual's parental rights in accordance with R.C. 2151.414, and because the plain language of R.C. 2151.35(B)(1) only requires a juvenile court to dismiss the complaint without prejudice should the juvenile court fail to hold a dispositional hearing within the required 90-day time frame set forth within that statute, it was improper for this court to find a juvenile court is divested of subject-matter jurisdiction to proceed when the juvenile court does not abide by the requirements of former R.C. 2151.35(B)(1). To hold otherwise, as we did in *In re K.K.*, ignores the plain language found in former R.C. 2151.35(B)(1), as well as the ultimate outcome in Ohio Supreme Court's decision in *In re K.M.*, 2020-Ohio-995, requiring a juvenile court to dismiss a case *without prejudice* if the juvenile court fails to conduct a dispositional hearing within 90 days of the filing of a complaint alleging that a child is abused, neglected, or dependent.

{¶ **16**} Our discussion of *In re K.K.* does not end there, however. This is because it was also improper for this court to reject the state's argument alleging the doctrine of res judicata applied given that no appeal was taken from the juvenile court's dispositional decisions regarding the three children at issue in that case. *Id.* at ¶ 18-20. In so holding,

we note that there are at least two Ohio appellate courts that have already found the doctrine of res judicata should apply in circumstances such as these. We agree with both of these Ohio appellate courts. This is because, as these other two Ohio appellate courts have explained, any error the juvenile court made in proceeding on the dependency complaint after the 90-day time limit expired rendered the juvenile courts' resulting decisions voidable, not void. *See In re G.T.*, 5th Dist. Richland No. 2021 CA 0066, 2022-Ohio-654, ¶ 41, 43 ("Mother could have argued that the trial court violated R.C. 2151.35[B][1] in a direct appeal from the court's June 6, 2019 dispositional order, but she did not timely appeal the dispositional order. Thus, res judicata bars her from raising the issue in this appeal"); and *In re L.S.*, 4th Dist. Ross No. 20CA3719, 2020-Ohio-5516, ¶ 19, 21 ("[h]ere, the juvenile court adjudicated L.S. a dependent child, and the court issued a R.C. 2151.353[A] dispositional order on April 30, 2019. The parents could have raised the claim that the juvenile court violated R.C. 2151.35[B][1] in a direct appeal from that order, but neither parent timely appealed the dispositional order after the juvenile court overruled Mother's objections to the magistrate's dispositional decision. * * * Thus, res judicata bars the parents from raising the issue in this appeal, and we overrule the third assignment of error"). Therefore, to the extent that this court's decision in *In re K.K.*, either expressly or implicitly, determined that the doctrine of res judicata did not apply even though no appeal was taken from the juvenile court's dispositional decisions, that part of our decision is also overruled and will no longer be followed by this court.

{¶ 17} In reaching this decision, we note the generally well-established principle that "'when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void.'" *In re R.R.*, 3d Dist. Logan No. 8-20-26, 2021-Ohio-1620, ¶ 34, quoting *State v. Harper*, 160 Ohio St.3d

480, 2020-Ohio-2913, ¶ 26; *In re Settlement for Fischer*, 5th Dist. Morgan No. 19AP0002, 2019-Ohio-4749, ¶ 13 ("judgments that are erroneous for other than jurisdictional reasons are merely voidable"). "If a judgment entry is voidable, then it must be challenged on direct appeal, or else principles of res judicata will apply * * *." *State ex rel. Romine v. McIntosh*, 162 Ohio St.3d 501, 2020-Ohio-6826, ¶ 12. This is because, "[r]es judicata prevents the litigation of issues that were raised on appeal or could have been raised on appeal." *In re K.B.*, 10th Dist. Franklin No. 05AP-783, 2006-Ohio-3104, ¶ 8. Therefore, "'any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings.'" *In re Z.D.*, 9th Dist. Summit No. 24295, 2008-Ohio-6436, ¶ 5, quoting *State v. Saxon*, 109 Ohio St. 3d 176, 2006-Ohio-1245, ¶ 16.

{¶ 18} "'[F]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes.'" *Bowman v. Bowman*, 12th Dist. Warren No. CA98-06-070, 1999 Ohio App. LEXIS 49, *11 (Jan. 11, 1999), quoting *Strack v. Pelton*, 70 Ohio St.3d 172, 175 (1994). "'Res judicata promotes the principle of finality of judgments by requiring plaintiffs to present every possible ground for relief in the first action.'" *In re S.J.*, 9th Dist. Summit No. 23199, 2006-Ohio-6381, ¶ 14, quoting *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, ¶ 5. "This doctrine has been held to apply to appellate proceedings in both criminal and civil cases." *In re A.S.*, 3d Dist. Allen Nos. 1-12-01 and 1-12-02, 2012-Ohio-3197, ¶ 52. This includes permanent cases regarding terminating of an individual's parental rights under R.C. 2151.414. *See, e.g., In re J.D.*, 12th Dist. Fayette No. CA2017-02-002, 2017-Ohio-4229, ¶ 17 (finding in a permanent custody case that "the children's dependency is res judicata and Mother is barred from challenging those findings in the context of this appeal").

{¶ 19} "[A] dependency adjudication followed by a disposition awarding or continuing

temporary custody of a child to a public services agency constitutes a final appealable order." *In re W.F.*, 12th Dist. Brown No. CA2014-01-002, 2014-Ohio-2892, ¶ 11, citing *In re Murray*, 52 Ohio St.3d 155 (1990). This is, in fact, a well-established principle. *In re C.G.*, 12th Dist. Preble Nos. CA2007-03-005 and CA2007-03-006, 2007-Ohio-4361, ¶ 11 ("[i]It is well-established that a dependency adjudication followed by a disposition awarding or continuing temporary custody of a child to a public children services agency constitutes a final appealable order"). Mother, therefore, could have, and possibly should have, appealed from the juvenile court's dispositional decisions in this case arguing it was error for the juvenile court to do anything other than journalize the dismissal of R.B.'s and B.C.'s cases without prejudice given its failure to hold a dispositional hearing for either R.B. or B.C. within the 90-day time limit set forth by the now former R.C. 2151.35(B)(1). *See In re H.M.M.*, 2022-Ohio-473 at ¶ 34 (after the 90-day deadline expires "a juvenile court has no authority to issue further orders except to journalize the dismissal of the case without prejudice"); and *In re D.G.*, 1st Dist. Hamilton Nos. C-200359 and C-200371, 2021-Ohio-429, ¶ 26 ("a juvenile court that force[s] the parties to continue litigating past the 90 day dispositional deadline exceed[s] its statutory authority").

{¶ 20} This would certainly be true here had Mother raised this challenge to the juvenile court prior to the juvenile court holding its dispositional hearings for R.B. and B.C. on July 2, 2018, approximately three weeks after the 90-day dispositional deadline set forth in R.C. 2151.35(B)(1) had already expired. Mother, however, did not raise this issue at any time prior to or during R.B.'s and B.C.'s dispositional hearings. Mother also did not appeal from the juvenile court's dispositional decisions regarding either R.B. or B.C. The same is true as it relates to R.B.'s and B.C.'s fathers. Mother instead raised this challenge for the first time over two years later during the second day of the three-day hearing held on

BCDJFS' permanent custody motions. Therefore, because Mother could have, but did not, appeal from the juvenile court's dispositional decisions arguing the juvenile court had violated R.C. 2151.35(B)(1) by failing to conduct dispositional hearings for R.B. and B.C. within 90 days of BCDJFS filing its complaints alleging R.B. and B.C. were neglected and dependent children, we find res judicata now bars Mother from raising that issue in this appeal. For these reasons, Mother's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 21} THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO APPELLANT'S PREJUDICE WHEN IT PROHIBITED MOTHER FROM EXPLORING A WITNESS' POTENTIAL BIAS.

{¶ 22} In her second assignment of error, Mother argues the juvenile court's decision granting permanent custody to BCDJFS should be reversed when considering the juvenile court refused to allow Mother to "explore the potential bias" of the caseworker on cross-examination. We disagree.

{¶ 23} "Under Evid.R. 616(A), any witness can be impeached by a showing of prejudice, bias, interest, or motive through examination or by extrinsic evidence." *In re Johnson*, 12th Dist. Butler No. CA2010-07-189, 2011-Ohio-2466, ¶ 10. However, even in permanent custody cases, it is well established that the admission or exclusion of evidence rests within the juvenile court's sound discretion. *In re A.F.*, 12th Dist. Butler No. CA2011-12-233, 2012-Ohio-2958, ¶ 32. This includes the admission or exclusion of evidence under Evid.R. 616(A). *Kelm v. Conkel*, 10th Dist. Franklin No. 16AP-494, 2017-Ohio-8545, ¶ 7-8. Because of this, "a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *In re J.D.*, 12th Dist. Butler No. CA2005-09-375, 2006-Ohio-3468, ¶ 7. An abuse of discretion connotes more than an

error of law or judgment. *In re K.G.,* 12th Dist. Clinton No. CA2020-11-017, 2021-Ohio-2154, ¶ 19. "An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re P.B.*, 12th Dist. Warren No. CA2019-10-108, 2021-Ohio-414, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Therefore, when analyzing whether the juvenile court erred by refusing to allow Mother to "explore the potential bias" of the caseworker assigned to R.B.'s and B.C.'s cases as part of her cross-examination of that witness, "we must determine whether the juvenile court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues." *In re A.S.,* 183 Ohio App.3d 697, 2009-Ohio-3932, ¶ 53 (12th Dist.).

**{¶ 24}** Mother argues it was error for the juvenile court to prohibit her from asking the caseworker assigned to R.B.'s and B.C.'s cases on cross-examination "about whether she was aware if the children's therapist shared her opinion about reunification" of Mother with her two children. Specifically, Mother argues it was error for the juvenile court to prohibit her from asking the caseworker if R.B.'s and B.C.'s therapist had shared with her (the caseworker) her (the therapist's) opinion about whether she (the therapist) believed Mother could successfully reunify with R.B. and B.C. and whether she (the therapist) believed Mother had made progress in her individual and family therapy. Mother also argues it was error for the juvenile court to deny her the ability to ask the caseworker if her recommendation that permanent custody of R.B. and B.C. be granted to BCDJFS was "in compliance with all the service providers" involved in this case. To support this claim, Mother argues the juvenile court should have permitted her to ask the caseworker these questions because the way in which the caseworker ultimately came to her conclusion that permanent custody of R.B. and B.C. should be granted to BCDJFS was "relevant and essential to Mother's case."

{¶ 25} Although this court has spent significant effort attempting to understand Mother's argument, we nevertheless find ourselves unable to fully understand Mother's challenge given that it provides little, if any, explanation as to how asking the caseworker these questions would have resulted in the caseworker providing responses indicating she may have harbored prejudice or bias against Mother.[4] However, even when setting aside this court's confusion, the record indicates that the juvenile court prohibited Mother from asking the caseworker these questions upon confirming with Mother that her therapist, as well as R.B.'s and B.C.'s therapist, had all been subpoenaed to testify at the hearing on BCDJFS' motions for permanent custody, thus rendering the caseworker's testimony about what the therapists' may have shared with the caseworker regarding the therapists' own opinions about the possibility of successful reunification of Mother with R.B. and B.C. unnecessary. We find no abuse of the discretion in the juvenile court's decision. This is because, given the record properly before this court, the juvenile court's decision prohibiting Mother from asking the caseworker these questions was not unreasonable, arbitrary, or unconscionable. This is particularly true here when considering Mother has also failed to demonstrate how the juvenile court's decision prohibiting her from asking the caseworker these questions subjected her to any resulting prejudice. Therefore, finding no merit to any of Mother's arguments raised herein, Mother's second assignment of error lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 26} THE TRIAL COURT ERRED BY FINDING THAT PERMANENT CUSTODY OF THE CHILDREN TO THE AGENCY WAS IN THE CHILDREN'S BEST INTERESTS,

---

4. We note that even the juvenile court had trouble understanding the purpose of Mother's questioning the caseworker in this manner. This is evidenced by the fact the juvenile court at one point asked Mother, "what are we talking about," a question the juvenile court later followed up by stating, "I'm still confused by the question" and "I wouldn't know how to answer that question."

BECAUSE AWARDING PERMANENT CUSTODY TO THE AGENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} In her third assignment of error, Mother argues the juvenile court erred by granting permanent custody of R.B. and B.C. to BCDJFS because its decision finding it was in R.B.'s and B.C.'s best interest to grant permanent custody was against the manifest weight of the evidence. We disagree.

*Permanent Custody Standard of Review*

{¶ 28} Before a mother's constitutionally protected liberty interest in the care and custody of her children may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Because the state is required to prove the statutory standards for permanent custody have been met by clear and convincing evidence, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 12th Dist. Butler No. CA2020-07-074, 2020-Ohio-6663, ¶ 13, citing *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6; and *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071, CA2019-05-072, and CA2019-05-073, 2019-Ohio-4127, ¶ 19. "This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented." *In re L.S.*, 12th Dist. Brown Nos. CA2019-03-001 and CA2019-03-002, 2019-Ohio-3143, ¶ 17, citing *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless conclude that the judgment is

against the manifest weight of the evidence.'" *In re C.S.*, 12th Dist. Clinton No. CA2020-04-006, 2020-Ohio-4414, ¶ 15, quoting *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

**{¶ 29}** In determining whether a juvenile court's decision to grant a motion for permanent custody is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.*, 12th Dist. Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15, citing *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25, citing *Eastley* at ¶ 21. "We are especially mindful of this in permanent custody cases." *In re M.G.*, 12th Dist. Warren No. CA2020-10-070, 2021-Ohio-1000, ¶ 26, citing *In re C.D.*, 12th Dist. Clermont No. CA2019-02-014, 2019-Ohio-4911, ¶ 13 ("[t]he presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases").

*Applicable Permanent Custody Statute and Two-Part Permanent Custody Test*

**{¶ 30}** "A public children services agency may seek permanent custody of a child in an abuse, neglect, or dependency proceeding in one of two ways." *In re S.H.*, 12th Dist. Butler Nos. CA2020-02-023 and CA2020-02-024, 2020-Ohio-3499, ¶ 17. "An agency may

either (1) obtain temporary custody of the child and then file a motion for permanent custody, or (2) request permanent custody as part of its original abuse, neglect, or dependency complaint." *In re A.A.*, 12th Dist. Clermont No. CA2015-12-098, 2016-Ohio-2992, ¶ 9, citing *In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22. Because BCDJFS filed its motions for permanent custody of R.B. and B.C. after the juvenile court had already issued an initial disposition, it was R.C. 2151.414(B)(1) that applied to BCDJFS' motions for permanent custody at issue in this case. *See In re T.K.K.* at ¶ 23, fn.1 (noting that R.C. 2151.414[B][1] "generally applies when an agency files a motion for permanent custody after an initial disposition"); *see also In re W.R.*, 12th Dist. Fayette No. CA2011-08-016, 2012-Ohio-382, ¶ 30 ("[i]n cases where an agency files a request for permanent custody as part of an initial disposition the court is guided by the standards in R.C. 2151.353[A][4]")

{¶ 31} Pursuant to R.C. 2151.414(B)(1), "the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test." *In re M.H.*, 12th Dist. Clermont Nos. CA2021-08-050 thru CA2021-08-052, 2022-Ohio-49, ¶ 30, citing *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. In accordance with that two-part test, the juvenile court must first find the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors set forth in R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. The juvenile court must then find one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) apply. *In re R.F.*, 12th Dist. Warren Nos. CA2021-06-052, CA2021-06-053, and CA2021-06-056, 2021-Ohio-4118, ¶ 10, citing *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent

custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio- 3188, ¶ 12. "This includes a circumstance, often referred to as the '12 of 22' provision, where the subject child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period." *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 20, citing R.C. 2151.414(B)(1)(d). This also includes a circumstance where the child has been abandoned. R.C. 2151.414(B)(1)(b).

{¶ 32} When considering the best interest of a child in a permanent custody case, the juvenile court is required under R.C. 2151.414(D)(1) to consider certain enumerated factors. *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 32. These factors include, but are not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. *In re J.C.*, 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. "The juvenile court may also consider any other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24. No one factor is given greater weight than the others. *In re R.D.*, 12th Dist. Clermont Nos. CA2021-05-017 and CA2021-05-018, 2021-Ohio-3780, ¶ 25. Nor is any one factor dispositive. *In re K.P.*, 12th Dist. Preble No. CA2021-11-016, 2022-Ohio-1347, ¶ 19.

*Mother's Argument and Analysis*

{¶ 33} Mother does not challenge the juvenile court's finding R.B. and B.C. had been in the temporary custody of BCDJFS for at least 12 months of a consecutive 22-month period prior to BCDJFS' filing of its permanent custody motions. Mother instead argues the juvenile court erred by finding it was in R.B.'s and B.C.'s best interest to grant permanent custody to BCDJFS. To support this claim, Mother argues it was error for the juvenile court to find it was in R.B.'s and B.C.'s best interest to grant permanent custody to BCDJFS because she has successfully addressed the issues that resulted in R.B.'s and B.C.'s removal from her custody and care, has exhibited stability in her life, is employed, lives in a three-bedroom apartment, has transportation, and has remained clean and sober for a period of several years. Mother also argues it was error for the juvenile court to find it was in R.B.'s and B.C.'s best interest to grant DCDJFS permanent custody considering she has exhibited "appropriate interactions and interrelationship" with both children during her visitation time. Mother further argues it was error for the juvenile court to find permanent custody was in R.B.'s and B.C.'s best interest given the children's' therapist testified that she has "no concerns" with Mother's interactions with either R.B. or B.C. This is in addition to Mother arguing it was error for the juvenile court to find it was in R.B.'s and B.C.'s best interest to grant permanent custody to BCDJFS because R.B. "enjoys his sessions" with Mother, because B.C. still refers to her as "Mom" and is "comfortable doing activities with her," and because she has "taken steps to become a better parent by enrolling and completing parenting classes."

{¶ 34} After a full and through review of the record, however, we find no error in the juvenile court's decision finding it was in R.B.'s and B.C.'s best interest to grant permanent custody to BCDJFS. This holds true even though the record indicates Mother had

completed some of her case plan services. *In re A.R.*, 12th Dist. Butler No. CA2015-08-143, 2016-Ohio-4919, ¶ 18 ("the case plan is simply a means to a goal, but not the goal itself"); *In re G.C.*, 12th Dist. Butler Nos. CA2016-12-237 thru CA2016-12-240, 2017-Ohio-4226, ¶ 42 ("successful completion of one's case plan is not dispositive of the issue of reunification"). The fact that Mother may have a strong bond with R.B. and B.C. does not change this outcome. *In re S.M.*, 12th Dist. Warren No. CA2018-07-076, 2018-Ohio-4654, ¶ 25 (strong bond between mother and child is but one factor to be considered when determining the best interest of a child); *In re I.B.*, 12th Dist. Butler No. CA2014-12-244, 2015-Ohio-1344, ¶ 20 (strong bond between mother and child is but one factor to consider when determining the best interest of a child).

**{¶ 35}** Neither does the fact that Mother may be able to exhibit "appropriate interactions and interrelationship" during her unsupervised visitation time with R.B. and visitation time conducted via video with B.C. This is because, despite Mother's claims that she has now turned her life around to the point where reunification with R.B. and B.C. is possible, the record nevertheless provides sufficient credible evidence to support the juvenile court's decision finding it was in R.B.'s and B.C.'s best interest to grant permanent custody to BCDJFS. This includes evidence that both R.B. and B.C. have expressed their desire to remain with their respective foster families rather than be returned to the custody and care of Mother. This is certainly understandable given the damage that was done to both R.B. and B.C. while in Mother's care. Therefore, because a child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security, *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 60, and because the record indicates R.B.'s and B.C.'s placement with their respective foster families has done wonders for their development both physically and

mentally, we find no error in the juvenile court's decision granting permanent custody of R.B. and B.C. to BCDJFS.  Accordingly, finding no merit to any of the arguments raised by Mother herein, Mother's third assignment of error lacks merit and is overruled.

**Conclusion**

{¶ 36} For the reasons outlined above, and finding no merit to any of the arguments Mother raised in support of her three assignments of error, the juvenile court's decision granting permanent custody of R.B. and B.C. to BCDJFS is affirmed.

{¶ 37} Judgment affirmed.

M. POWELL, P.J., and PIPER, JJ., concur.